# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# LONDON

**CRIMINAL NO. 6:24-CR-34-REW**

**UNITED STATES OF AMERICA**                            **PLAINTIFF**

**V.**                   <u>**SENTENCING MEMORANDUM**</u>

**FELIX LEWIS JR.**                                   **DEFENDANT**

\*   \*   \*   \*   \*

On June 2, 2025, this Court accepted Felix Lewis's guilty plea to Counts 1 and 4 of the Indictment alleging that he conspired to distribute 50 grams or more of a methamphetamine mixture and that he possessed a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A). *See* [R. 42: Order]. Mr. Lewis has no objections to the Pre-Sentence Investigation Report (PSR) that would impact his offense level, criminal history, or sentencing range calculations.

Given his age and physical condition, Mr. Lewis respectfully requests the Court impose a sentence of 120 months. Mr. Lewis also asks the Court to recommend that he be designated to a federal medical center to complete his sentence.

In addition, Mr. Lewis requests the Court's sentence reflect credit for time already served in connection with his conviction in Knott Circuit Court Case No. 23-CR-59. *See* PSR, Paragraph 44; USSG § 4A1.3(b)(1). In the alternative, Mr.

Lewis believes a departure or downward variance pursuant to USSG § 4A1.3(b)(1) may be appropriate.

Finally, Mr. Lewis asks the Court to order than any "state term of imprisonment" that is "anticipated to result" from the pending charges in Knott Circuit Court Case No. 24-CR-06 run concurrently with the sentence imposed in this case. *See* PSR, Paragraph 50; USSG § 5G1.3(d).

Mr. Lewis offers the following to assist the Court:

### Nature and Circumstances of the Offense

Paragraphs 7-21 of the PSR discuss the nature and circumstances of Mr. Lewis's offenses. Mr. Lewis sold quantities of methamphetamine to users and other drug dealers over a period of approximately two years. *See* [R. 37: Plea Agreement, Page 2, Paragraph 3(a)]. During a traffic stop on January 14, 2023, Mr. Lewis acknowledged his possession of approximately 28 grams of methamphetamine and a semi-automatic pistol. Prior to the "search of his person, Mr. Lewis surrendered" the drugs, paraphernalia, and cash. PSR, Paragraph 16. Mr. Lewis also admitted he possessed the firearm located under the driver's seat of the vehicle. *See* [R. 37: Plea Agreement, Pages 2-3, Paragraph 3(b)].

### History and Characteristics of the Defendant

The PSR has discussed these considerations generally, but Mr. Lewis offers the following additional detail regarding his background:

Mr. Lewis is a 57-year-old native of Southeast Kentucky. *See* PSR, Paragraph 56. His parents Felix Sr. and Bessie raised Mr. Lewis and his nine

siblings on a farm in Perry County. *Id.* While the family had limited resources, Mr. Lewis's childhood was generally positive. He attended MC Napier High School but ultimately withdrew in the 12th grade to go to work. *Id*. at Paragraph 65. Throughout the 1980s and 1990s, Mr. Lewis consistently held construction jobs to support himself and his family. He married his first wife Martha Williams in 1988. *Id*. at Paragraphs 56, 66. The couple raised daughter Robin before divorcing in 2000. *Id*. at Paragraph 56. Mr. Lewis re-married soon thereafter, and he helped raise his stepchildren Michael Merrill and Ben Hogan. *Id*.

Mr. Lewis sustained his first criminal conviction at age 31 for driving under the influence. *Id*. at Paragraph 40. This occurred in August 2000 while his divorce from Ms. Williams was being finalized. *Id*. at Paragraphs 40, 56. While he had struggled with substance abuse at times in the past, Mr. Lewis's drug use escalated significantly over the next few years. He became addicted to prescription opiates, leading to two convictions for possession of a controlled substance in 2005 and 2010. *Id*. at Paragraphs 41, 42.

In 2014, Mr. Lewis first tried methamphetamine. *Id*. at Paragraph 63. He soon became a daily user. *Id.* Over time, Mr. Lewis's addiction grew, and he began selling to support his habit. Following his arrest on January 14, 2023 for his conduct in this case, Mr. Lewis remained in custody for only ten days. *Id*. at Paragraph 5. He was arrested again for drug possession just a few weeks later. *Id*. at Paragraph 44.

The circumstances were similar to Mr. Lewis's January 14, 2023 arrest. On February 27, 2023, Mr. Lewis was a passenger in a vehicle driven by James Griffith. *Id*. During a traffic stop, Mr. Lewis voluntarily surrendered "two small baggies" containing methamphetamine and Xanax pills. *Id*. Mr. Lewis entered a guilty plea to possession of a controlled substance in connection with this conduct on December 14, 2023 and received a three-year suspended sentence, which was ultimately revoked. *Id*. His sentence expired on August 11, 2025. *Id*.

Mr. Lewis remained in custody from February 27, 2023 to April 4, 2023. *Id*. at Paragraph 5. Then on August 24, 2023, Mr. Lewis was again involved in a traffic stop and voluntarily surrendered a plastic baggie containing methamphetamine and a clear glass pipe. *Id*. at Paragraph 50. Mr. Lewis was arrested, but the case was dismissed on November 9, 2023. Months later, an indictment was returned in Knott Circuit Court Case No. 24-CR-06, and Mr. Lewis was served with the related warrant while in custody on April 10, 2024. *Id*. The charges in this case remain pending.

Mr. Lewis has admitted to his involvement in distributing methamphetamine over a period of years. He stands convicted of a conspiracy with no other named defendants stretching from January 2021 to "on or about January 14, 2023[.]" [R. 1: Indictment, Page 1]. This is the context within which Mr. Lewis was charged with another drug offense on February 27, 2023, just weeks after his prior arrest on January 14. Mr. Lewis believes this subsequent offense constitutes relevant conduct under USSG § 1B1.3(a)(2) because it was the

"same course of conduct" and "part of [an] ongoing series of offenses" encompassed by his Count 1 conspiracy conviction. As a result, Mr. Lewis asks that the Court's sentence reflect credit for the time he has already served in connection with his conviction in Knott Circuit Court Case No. 23-CR-59. *See* USSG § 4A1.3(b)(1).

As the Sixth Circuit has noted, the "on or about" language utilized in many conspiracy counts does not limit the admissibility at trial of conduct occurring before or after the date identified in the indictment. Instead, when the government attempts to establish that a conspiracy existed, the "proof offered" need only be "reasonably near the date alleged in the indictment." *United States v. Benson*, 591 F.3d 491, 497 (6th Cir.2010) (citing *United States v. Hettinger*, 242 Fed.Appx. 287, 295 (6th Cir.2007) (citing *United States v. Ford*, 872 F.2d 1231, 1236 (6th Cir.1989))). *See also United States v. Manning*, 142 F.3d 336, 339-40 (6th Cir.1998) ("difference of more than a month reasonable" for conspiracy with indictment providing "seven-day time span"). Given that sentencing is a broader inquiry permitting courts to consider even "uncharged" or "dismissed" conduct in determining the appropriate sentencing range, Mr. Lewis's conviction for his February 27, 2023 conduct should be considered relevant conduct under the Guidelines. *United States v. Webb*, 2021 WL 4806517 at *4 (6th Cir. October 14, 2021).

In the alternative, Mr. Lewis believes a departure or downward variance pursuant to USSG § 4A1.3(b)(1) may be appropriate. Mr. Lewis has been

assessed a total of four criminal history points, three of which resulted from his conviction in Knott Circuit Court Case No. 23-CR-59. *See* PSR, Paragraphs 44, 46. With those points, Mr. Lewis has been placed in Criminal History Category III, resulting in a guideline imprisonment range of 87-108 months for his drug conviction. Without them, Mr. Lewis would have fallen into Criminal History Category I, producing a guideline imprisonment range of 70-87 months. Given the circumstances, if the Court determines Mr. Lewis's conviction in Knott Circuit Court Case No. 23-CR-59 is not relevant conduct to his Count 1 conviction, he asks the Court to apply a modest departure or downward variance pursuant to USSG § 4A1.3(b)(1) because his "criminal history category substantially over-represents the seriousness of" his "criminal history."

Regarding the pending charges in Knott Circuit Court Case No. 24-CR-06, Mr. Lewis asks the Court to exercise its discretion under USSG § 5G1.3(c) to order that any "state term of imprisonment" that "is anticipated to result" run "concurrently" with the sentence imposed in this case. Mr. Lewis's conduct in that case was driven by the same factors as his Count 1 conviction and appears to have been the final extension of his long-term involvement with methamphetamine.

Mr. Lewis also has significant health issues the Court should take into account when determining an appropriate sentence. As discussed in Paragraphs 58-61 of the PSR, Mr. Lewis was born with a heart defect requiring several surgeries over the course of his life. Physicians installed a pacemaker in 2010.

While in pre-trial detention at Laurel County Correctional Center (LCCC) in this case, Mr. Lewis developed an internal infection around the device. At first, neither he nor jail staff recognized what was happening. Mr. Lewis's chest began to swell over the course of several days as he became septic. He was bed-ridden, and his blood pressure and heart rate dropped significantly. Other inmates alerted LCCC staff when they realized Mr. Lewis was struggling to breathe.

Doctors identified the infection and sepsis after he was hospitalized and prescribed intravenous antibiotics to attempt to address it before conducting surgery to remove the now non-functioning pacemaker. Following that procedure, physicians wanted Mr. Lewis to recover before attempting to install a new device, but the infection returned. Weeks later, doctors at Pikeville Medical Center tried to implant a new pacemaker, but Mr. Lewis's condition prevented them from doing so. After another recovery period, Mr. Lewis was transported to University of Kentucky Hospital in Lexington where a new device was installed.

The trauma from Mr. Lewis's underlying cardiac issues and related treatments have taken a significant toll. He has remained in LCCC's medical unit since the surgeries because he now requires the use of an oxygen machine and is outfitted with a cellular-enabled device that regularly transmits data about the status of his pacemaker. Mr. Lewis also has a history of kidney disease, COPD, ventricular tachycardia, persistent atrial fibrillation, diabetes, and Hepatitis B. This combination of conditions and recent health issues has affected his physical

strength and requires him to take numerous prescription medications on a daily basis. *See* PSR, Paragraph 60.

Mr. Lewis is now 57 years old. Given his persistent health problems and related treatments, he is and will remain extremely limited for the remainder of his life. For these reasons, Mr. Lewis asks that the Court consider applying a downward variance pursuant to USSG § 5H1.1 based on his age and infirmity. Likewise, Mr. Lewis requests the Court recommend he be designated to a federal medical center to complete his sentence. While he also would like the opportunity to participate in drug treatment, Mr. Lewis's physical health must take precedence in terms of placement within the Bureau of Prisons.

## The Sentence

In all criminal cases, any sentence imposed should reflect the seriousness of the offense, promote respect for the law, and provide just punishment to the defendant. The sentence also should afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant. In addition, the sentence should provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner available. Accordingly, the Court is required to consider all of the types of sentences available. *See* 18 U.S.C. § 3553(a).

Mr. Lewis's offenses are serious. He has admitted to distributing a significant quantity of a methamphetamine and to possessing a firearm in furtherance of his drug activity. This explains why each of his convictions carries

a statutory mandatory minimum sentence of 5 years and why those sentences must be imposed consecutively. To his credit, Mr. Lewis immediately admitted his conduct when he was confronted, volunteering the contraband in his possession to law enforcement on multiple different occasions. He also has accepted full responsibility before this Court. Given full consideration of the circumstances, a sentence of 120 months will be sufficient to reflect the seriousness of the Mr. Lewis's offenses.

The same sentence will also be sufficient to promote respect for the law, to provide just punishment, and to afford adequate deterrence. As discussed previously, Mr. Lewis had never been convicted of a crime until he was 31 years old. Sadly, he became a serious addict during that period of his life, and his involvement with drugs escalated over time. Looking back, he truly regrets the extent to which he allowed drugs to take control of his life.

Now 57, the requested 120-month sentence would require Mr. Lewis to serve at least 8 ½ years in federal custody without taking into account any sentence that may be imposed in connection with his pending charges in Knott Circuit Court Case No. 24-CR-06. A recent 2022 report from the Sentencing Commission noted that the "recidivism rate of older offenders (21.3%)" is "less than half that of offenders under the age of 50 (53.4%)."[1] Likewise, the

---

[1] United States Sentencing Commission, *Older Offenders in the Federal System*, July 2022 at Page 5 (available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220726_Older-Offenders.pdf).

Commission discussed how "the aging process accelerates once an offender is incarcerated" and that "a relatively short sentence could exceed life expectancy" for older offenders. *Id*. at Pages 2, 40.

There can be no doubt a sentence of 120 months will take a significant toll on Mr. Lewis. Given his age and health, a ten-year sentence will send a strong message to him and others like him that criminal conduct of this sort will not be tolerated. At the same time, the requested sentence will also account for the disparate impact a period of incarceration will have on a defendant like Mr. Lewis as compared to a younger, healthier offender. More than anything, to whatever extent possible, Mr. Lewis asks the Court to impose a sentence that allows him the possibility of returning to his family before his health declines further.

## Conclusion

For the foregoing reasons, Mr. Lewis respectfully requests the Court impose a sentence of 120 months. Mr. Lewis also asks the Court to recommend that he be designated to a federal medical center to complete his sentence. In addition, Mr. Lewis requests the Court's sentence reflect credit for time already served in connection with his conviction in Knott Circuit Court Case No. 23-CR-59 or that the Court impose a departure or variance to account for his increased criminal history score. Finally, Mr. Lewis asks the Court to order any term of imprisonment resulting from his pending charges in Knott Circuit Court Case No. 24-CR-06 to run concurrently with the sentence imposed in this case.

Respectfully Submitted,

/s/ Jarrod J. Beck

LAW OFFICE OF JARROD J. BECK, PLLC
101 WEST SHORT STREET
LEXINGTON, KENTUCKY 40507
TELEPHONE: (859) 948-5535

COUNSEL FOR FELIX LEWIS JR.

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2025, I filed the foregoing sentencing memorandum with the Clerk of the Court, and the ECF filing system will notify all counsel of record.

/s/ Jarrod J. Beck

COUNSEL FOR FELIX LEWIS JR.